IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2016 Session

## NATALIE ROWLAND STEWART v. BRIAN STACY ROWLAND

**Appeal from the Circuit Court for Shelby County**
**No. CT00238102     Jerry Stokes, Judge**

_____

**No. W2015-02147-COA-R3-CV – Filed June 2, 2016**
_____

This is a post-divorce case.  Father appeals the trial court's decision not to hold Mother in contempt for failure to provide court-ordered insurance coverage for the child.  Father also appeals the trial court's division of the child's uncovered medical bills and seeks reimbursement for monthly payments he made toward the child's insurance premiums while Mother failed to provide coverage.  In addition, Father appeals the trial court's order requiring him to provide insurance for the child past the age of majority based on the child's medical disability and the judgment entered against him for Mother's attorney's fees.  We conclude that Father is entitled to a credit for those insurance premiums he paid to Mother during the period of time the child was enrolled in TennCare.  We reverse the trial court's order on attorney's fees.  The order is otherwise affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed in Part, Affirmed in Part as Modified, and Remanded

KENNY ARMSTRONG, delivered the opinion of the Court, in which ANDY D. BENNETT and BRANDON O. GIBSON, JJ., joined.

Lisa J. Gill and Elizabeth Walker Fyke, Memphis, Tennessee, for the appellant, Brian Stacy Rowland.

Stuart Brian Breakstone, Memphis, Tennessee, for the appellee, Natalie Rowland Stewart.

# OPINION

## I. Background

Natalie Rowland Stewart ("Mother," or "Appellee") and Brian Stacy Rowland ("Father," or "Appellant") were married on March 20, 2000. The parties were granted a divorce on September 30, 2002. In conjunction with the divorce, the parties entered into a permanent parenting plan for their minor child, who was born on April 20, 1997. The parties' child was born with an autosomal recessive blood disorder called Pyruvate Kinase Deficiency, which severely compromises her immune system. Since birth, the child has seen some fifty specialists and has had more than twenty-four blood transfusions. As is relevant to the instant appeal, the parenting plan that was entered in the trial court on September 3, 2002, provides:

> **3.3 HEALTH INSURANCE.** [X] Mother [ ] Father will maintain medical/hospital insurance on the minor child(ren), and proof of continuing coverage will be furnished by February 15 of each year. Uncovered medicals, including deductibles, if any, will either [ ] borne by [ ] Mother [ ] Father, or [X] divided equally between the parties . . . .

> **3.4 DENTAL INSURANCE.** [X] Mother [ ] Father will maintain dental/orthodontics insurance on the minor child(ren), and proof of continuing coverage will be furnished by February 15 of each year. Uncovered medicals, including deductibles, if any, will either [ ] borne by [ ] Mother [ ] Father, or [X] divided equally between the parties . . . .

> ***

> **3.6 OTHER PROVISIONS.** The following special provisions apply to support: The Father shall reimburse Mother $66.00 per month for the cost of carrying the child's medical/dental insurance coverage. Said amount shall be paid no later than the last day of each month.

On December 11, 2013, Mother filed a petition for civil and criminal contempt and to modify the permanent parenting plan. Therein, Mother specifically averred that Father had failed to comply with the foregoing provisions of the permanent parenting plan by willfully failing and refusing to pay or reimburse Mother for his one-half share of the child's uncovered medical expenses. Mother further averred that

> [i]n October, 2013, [Father] filed reports with [his] insurance carrier, the

- 2 -

Shelby County Tennessee Sheriff Department, the Olive Branch Mississippi Police Department, the FBI and the FTC alleging that [Mother] committed forgery and identity theft when she signed the [Father's] name to medical documents for the minor child to seek medical treatment for a blood condition the minor child was born with. The minor child['s] health coverage is through [Father's] employer. Since that time, the insurance provider has begun charging back claims paid on the minor child's behalf for treatment the minor child received as far back as the effective date of coverage.

Based, *inter alia*, on these allegations, Mother asked the trial court to hold Father in contempt and to calculate his arrearage for failure to pay his portion of the child's uncovered medical expenses. Mother also asked the court to reimburse her for attorney's fees expended in bringing her petition.

On February 7, 2014, Father filed a cross-petition for civil and criminal contempt against Mother. Therein, Father alleged, in relevant part, that Mother

has not maintained any medical/hospital insurance on the child at any time since the entry of the Final Decree of Divorce. [Mother] has not furnished to [Father] any proof of continuing coverage by February 15 of any year as provided in the Parenting Plan. [Mother] has willfully and knowingly failed to do or provide the aforementioned despite her ability to do so, and despite her actual knowledge that she is required to do so pursuant to the Orders of this Court.

Father further averred that Mother had also failed to provide dental coverage for the child as required under the parenting plan. For these reasons, Father asked the court to find Mother in contempt and to award his attorney's fees and costs incurred in bringing the cross-petition. Also on February 7, 2014, Father filed his answer to Mother's petition. Therein, Father denied that he had violated the parenting plan. Specifically, he averred that Mother had not provided him with any bills for the child's uncovered medical expenses and that he was current on all of his child support obligations.

The case was continued in order for the parties to conduct discovery and attempt mediation. On May 5, 2015, Mother filed an amended petition for civil and criminal contempt and to modify the permanent parenting plan. In relevant part, Appellee's amended petition provides:

4. [Mother] is currently ordered to provide health insurance but can only afford TennCare which many of the minor child's providers do not accept.
5. [Father] has also maintained the parties' child on his insurance up until this

December when he opted to no longer include the parties' minor child in his family plan despite it not costing him anything additional.

Citing the child's ongoing medical issues, Mother requested that the court require both parties to maintain insurance coverage for the child and to "continue to do so even past the age of majority and graduation from high school since this is a disability that she has had since birth."

On or about June 3, 2015, Appellee filed a motion *pendente lite* requesting, in relevant part, that Father be ordered to provide health insurance for the minor child past the age of majority and for attorney's fees in the amount of $1,120.00. This motion was heard by the Deputy Divorce Referee, who entered an order on his findings on June 22, 2015. The order on the divorce referee hearing provides, in pertinent part, that: (1) Father shall immediately take all necessary steps to add the minor child to his family insurance plan and shall maintain insurance on the child "at least until she attains the age of 26;" (2) Father shall continue to pay for one-half of all uncovered medical bills, expenses, co-pays and deductibles for the minor child until she reaches the age of 26; and (3) Father shall pay Mother's attorney's fees in the amount of $1,120.00. On June 15, 2015, Father filed an appeal of the Divorce Referee's ruling in the trial court. Specifically, Father argued that he should not be required to provide health insurance for the child past the age of majority because there was no proof before the Divorce Referee to show that the child was disabled.

On August 28, 2015, the trial court heard the parties' respective petitions for contempt and modification of the parenting plan, and Father's appeal of the Divorce Referee's ruling. By order of September 30, 2015, the trial court held, in relevant part, as follows:

(1) Mother's Amended Petition—Issue of Disability and Extension of Health Insurance Coverage: That the parties child . . . was at the time of the filing of the Amended Petition and still is disabled such that this Court retains jurisdiction over her support pending further orders of this Court. Further, that [Father] shall immediately take all necessary steps to: (1) add [the child] to his family insurance plan . . .; (2) provide proof of coverage and an insurance care to [Mother]; and (3) maintain said coverage until [the child] attains the age of 21. Further that both parties shall be equally responsible for one-half of all uncovered medical bills, expenses, co-pays and deductibles of [the child] until she attains the age of 21.

***

(3) Outstanding Medical Bills: On the issue of unreimbursed medical bills, the Court finds that [Mother] is entitled to a judgment as child support for

- 4 -

reimbursement of medical bills not covered by insurance in the amount of 50% of $9,054.17 or $4,527.08 which [Father] is ordered to pay to [Mother] at the rate of $400.00 per month in equal installments of $200.00 on the first and 15th of each month beginning October 1, 2015 until paid in full with interest accruing thereon at the rate of 12% per annum.

On the issue of outstanding medical bills, the Court finds that the bills [Mother] claims were "charged back" by the Insurance provider as a result of [Father's] reporting [Mother's] alleged forgery on hospital treatment bills which [Mother] claims she had permission to sign, listed on [Mother's] Rule 1006 Summary titled "Outstanding Medical Claim Balances" as follows:

|     |         |                  |              |
|-----|---------|------------------|--------------|
| (a) | Line 10: | DOS: 5/24/08    | $30,956.30   |
| (b) | Line 32: | DOS: 2009 & 2010 | $4,335.88   |
| (c) | Line 40: | DOS: 2009       | $126.60      |
| (d) | Line 41  | DOS: 2009       | $549.75      |
| (e) | Line 43  | DOS: 9/30/09    | $512.00      |
| (f) | Line 44  | DOS: 11/02/09   | $119.00      |

Those outstanding bills identified by [Mother] total $36,599.53, or roughly $36,600.00. The Court[,] therefore[,] finds because those charges are due to [Father's] actions that [Father] shall pay the first $18,300 of the $36,600.00 that [Mother] alleged is owed in outstanding medical bills due to [Father's] actions. [Father] shall pay outstanding amounts directly to the providers and shall provide proof of actual payment to [Mother] within 15 days of payment to any providers owed any current outstanding medical bill towards the $18,300.00 he is ordered to pay. After [Father] pays his one-half portion of the $36,600.00 [Mother] claims resulted from [Father's] actions, [Mother] shall be responsible for her one-half portion of the $36,600.00 for those bills listed above as (a)—3(f).

\*\*\*

(5) Attorney's Fees: Further, this Court finds that [Mother] is entitled to a portion of her attorney's fees in the amount of $3,500.00, to be paid as follows:

(a) [Father] is ordered to pay $1,120.00 of the $3,500.00 to [Mother's attorney] within 60 days from the date of this hearing . . .; and
(b) [Father] is ordered to pay the balance in the amount of $2,380.00 to [Mother's attorney] within 90 days from the date of this hearing . . . .

In addition, the trial court held that neither party had met his or her burden to prove that the other party was in either criminal or civil contempt. Therefore, the court declined to impose sanctions for contempt against either party.

## II. Issues

Father appeals. He raises five issues for review as stated in his brief:

> I. Did the trial court err when it failed to find that the Appellee was in contempt for failing to provide insurance coverage for the parties' minor child as required by their Permanent Parenting Plan?

> II. Did the trial court err by failing to apply insurance premium payments Appellant paid to Appellee in the total amount of $10,098.00 where Appellee did not provide medical/dental insurance and, instead, coverage was mostly provided by a step-parent?

> III. Did the trial court err by allowing Appellee to recover for allegedly "uncovered medicals" where Appellee was in violation of the provision requiring her to provide health insurance?

> IV. Did the trial court err in modifying the Permanent Parenting Plan to require Appellant to provide dental/medical insurance for the minor child past the age of majority?

In addition, both parties ask this Court to award their respective attorney's fees and costs for this appeal.

## III. Standard of Review

Because this case was tried by the court, sitting without a jury, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. ***Wood v. Starko***, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001).

## IV. Analysis

## A. Contempt

Father appeals the trial court's finding that Mother was not in contempt of court for failure to provide health insurance for the child as required under the parenting plan.[1] At the hearing, Mother argued, *inter alia,* that she could not be held in contempt of the court's order when she had always provided for the child's insurance either through her or her spouse's employer, or through TennCare.

Regarding the payment of insurance premiums for minor children following a divorce, Tenn.Code Ann. § 36-5-101 provides in pertinent part:

> (h) (1) The court may direct the acquisition or maintenance of health insurance covering each child of the marriage and may order either party to pay all, or each party to pay a pro rata share of, the health care costs not paid by insurance proceeds. **In no event shall eligibility for or receipt of Medicaid or TennCare-Medicaid by the custodial parent be considered to meet the need to provide for the child's health care needs in the order, if reasonable and affordable health insurance is available**.

Tenn. Code Ann. § 36-5-101(h)(1) (emphasis added). Furthermore, the Child Support Guidelines provide:

> 4. Eligibility for or enrollment of the child in TennCare or Medicaid shall not satisfy the requirement that the child support order provide for the child's health care needs.

Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(a).

Under the foregoing authority, Mother could not satisfy the trial court's order by enrolling the child in TennCare. The mere fact that the Mother violated the parenting plan,

---

[1] Based on Father's argument in his appellate brief, we conclude that he is appealing only the trial court's refusal to find Mother in civil contempt. Although Father also alleged criminal contempt against Mother in his cross-petition, after reviewing the trial court record, it does not appear that Father pursued the criminal contempt allegations at trial. Regardless, under the facts of this case, we conclude that Father has failed to carry his burden to show, beyond a reasonable doubt, that Mother was guilty of criminal contempt.

however, is insufficient to carry Father's burden to show that she was in contempt in the absence of the willfulness element.

A claim of civil contempt based upon alleged disobedience of a court order requires four essential elements: (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the violation of the order must have been "willful." *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citing *Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth.,* 249 S.W.3d 346, 354-55 (Tenn. 2008)). The order at issue is lawful, and there is no dispute regarding the clarity of the order or whether Mother violated the order; thus, we focus our analysis on the fourth element, whether Mother's violation was "willful." When reviewing a trial court's findings of civil contempt, the factual issue of whether "a particular violation was willful, [is] reviewed *de novo*, with a presumption of correctness afforded to the trial court's findings." *Id*. at 17 (citing *Konvalinka*, 249 S.W.3d at 356-57).

In the context of civil contempt, conduct is deemed willful if it "'is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.'" *Konvalinka*, 249 S.W.3d at 357 (quoting *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006)). In other words, "[h]olding an individual in contempt is an available remedy 'only when the individual has the ability to comply with the order at the time of the contempt hearing.'" *Moore v. Moore*, No. M2004–00394–COA–R3– CV, 2007 WL 2456694, at *3 (Tenn. Ct. App. Aug. 29, 2007) (quoting *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000)).

At the hearing, Mother testified that, following her lay off, she was unable to afford COBRA payments. Accordingly, she procured TennCare for the child. Although, on appeal, Father contends that there was no proof that Mother could not afford the COBRA premiums other than her "self-serving" testimony, Father did not provide any countervailing evidence to dispute Mother's testimony on this point. Furthermore, the trial court made no finding that Mother's testimony, on this point, was not credible. The fact that Mother was unable to afford coverage other than TennCare would likely negate the willfulness requirement for a finding of contempt. However, even if we assume, *arguendo*, that it would not, there is no evidence that Mother knew that the provision of TennCare was not sufficient to satisfy the court's order to maintain the child's health insurance. From the totality of the circumstances, we, therefore, conclude that Father has failed to carry his burden to show that Mother was in willful violation of the court's order. Accordingly, we affirm the trial court's finding that Mother was not in contempt.

## B. "Uncovered Medicals"

Although we do not reverse the trial court's finding that Mother was not in contempt for failure to provide health insurance for the child, it is, nonetheless, undisputed that she failed to do so. Father argues that but for Mother's failure to provide court-ordered insurance, his insurance company would not have "charged back" payments made for the child's medical care. Father contends that because these "charge backs" were caused by Mother's failure to provide insurance, the trial court erred in requiring him to pay any portion of these expenses. We disagree. Despite Father's argument, the record shows that these expenses were, at least in part, due to his actions in accusing Mother of fraud in the procurement of the payments made by his insurance provider.

The record shows that Father has carried the child on his insurance from birth. While Mother maintained insurance on the child through her (or her spouse's) employer, Father's insurance was the secondary insurance for the child. When Mother enrolled the child in TennCare, however, Father's insurance became the child's primary insurance. *See* Tenn. Comp. R. & Regs. 1200-13-13-.09(6) ("TennCare shall be the payor of last resort, except where contrary to federal or state law."). In this regard, Father is correct that but for Mother's failure to provide adequate coverage, the insurance coverage he provided would not have been triggered. However, Father must accept some of the culpability for the "charge backs." In its order, *supra*, the trial court specifically found that the charged back amounts, i.e., $36,600.00, "are due to [Father's] actions." While we do not entirely agree with the trial court that Father is solely at fault for the charged back amounts, we do agree that, given the fact that Father had provided secondary coverage for the child for many years, he should have known that these charges were paid on the child's behalf. Instead of contacting Mother to determine why his insurance was being charged, or coming back into the court for a determination on the child's insurance coverage, Father, in what appears from the record to be an attempt to punish Mother, contacted his insurance provider and made allegations of fraud. In this regard, but for Father's actions, there would have been no charged back amounts. Accordingly, we conclude that both parties are somewhat at fault in the creation of the charged back amounts. Because the parenting plan provides that the parties will bear equally the costs of uncovered medical expenses, we cannot conclude that the trial court erred in ordering Father to pay one-half of the $36,600.00.

## C. Credit for Insurance Premium Payments

As set out above, the parenting plan provides that Father will reimburse Mother $66 per month for the costs of the child's health insurance premiums. Mother testified that, at the end of 2012, she was laid off. Thereafter, Mother procured TennCare coverage for the child. Although Mother testified that "she believed" Father had stopped paying the $66 per month at some point after the child's insurance was placed with TennCare, there is no evidence that

Father stopped paying the $66 per month at any time until May 2015, when the child reached the age of majority. In fact, there was no evidence that Father was behind on any of his payments to Mother. In other words, the record shows that, from January 2013 until May 2015, Father paid Mother $66 per month for the child's insurance premiums, and Mother failed to provide health insurance for the child except through TennCare, which as discussed above did not satisfy her obligation to provide health insurance for the child. Tenn. Code Ann. § 36-5-101(h)(1); Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(a).

On appeal, Father asks this Court to award him a credit of some $10,000, which is the sum of all of the $66 payments he made for the child's insurance premiums from the date of entry of the parenting plan until the child reached majority. However, during most of the relevant period, Mother did provide insurance for the child. It was not until 2013 that she enrolled the child in TennCare. Accordingly, Father is only entitled to a credit for the $66 payments he made from January 2013 (i.e., when Mother procured TennCare) through May 2015 (i.e., when the child turned eighteen), or twenty-nine months. Accordingly, Father is entitled to a $1,914.00 credit. Such credit does not constitute a retroactive modification of Father's child support obligation under this Court's holding in *Peychek v. Rutherford*, No. W2003-01805-COA-R3-JV, 2004 WL 1269313 (Tenn. Ct. App. June 8, 2004), wherein we stated, in relevant part:

> [T]his court has acknowledged that the statute prohibits retroactive modifications of child support payments. As for credits, however, this court has held that they are not modifications. Instead, the credit recognizes that the obligor parent provided the support the court ordered in the first place. *Netherton*, 1993 WL 49556, at *2

> ***

> [T]he nature of a credit "recognizes that the obligor parent provided the support the court ordered in the first place." *Netherton v. Netherton*, 1993 WL 49556 (Tenn. Ct. App. Feb. 26, 1993).

> ***

> [I]t is well settled that non-custodial parents may be given credit against their child support obligation for payments made on behalf of their children if such payments are for necessaries that the custodial parent either failed to provide or refused to provide. *Brownyard v. Brownyard*, 1999 WL 418352 (Tenn. Ct. App. June 22, 1999); *Hartley v. Thompson*, 1995 WL 296202 (Tenn. Ct. App. May 17, 1995); *Oliver v. Oczkowicz*, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990). However, the credit for necessaries cannot exceed the amount of support due for the period during which the necessaries were furnished. W.

Walton Garrett, <u>Divorce, Alimony and Child Custody</u> § 14-8(8) (2001). The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed. What items are appropriate and needed depends on the parent's ability to provide and this issue is to be determined by the trier of fact. ***Id***. at § 2-3(3).

***

In order to maintain a successful claim for necessaries, the plaintiff must prove: (1) that the child needed the particular goods or services that were provided, (2) that the defendant had a legal obligation to provide the goods or services, (3) that the defendant failed to provide the goods or services, and (4) the actual cost of these goods or services. ***Hooper v. Moser***, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003).

***Peychek***, 2004 WL 1269313, at *4. Because Father has satisfied his burden to show that the child was in need of health insurance, that Mother was legally obligated to provide insurance, and that Mother failed to provide this necessary, he is entitled to a credit of $1,914.00 for the time period Mother failed to provide health insurance other than TennCare. Accordingly, we remand for entry of judgment in favor of Father and against Mother for $1,914.00.

### D. Provision of Health Insurance beyond the Age of Majority

Father next appeals the trial court's order that he provide insurance for the child until the age of twenty-one. Specifically, Father contends that the child is not disabled as that term is defined under the Americans with Disabilities Act, such that he should be ordered to provide health insurance coverage past the child's majority. Tennessee Code Annotated Section 36-5-101 provides:

(k)(1) Except as provided in subdivision (k)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act, compiled in 42 U.S.C. § 12101 et seq., until such child reaches twenty-one (21) years of age.

42 U.S.C.A. § 12102 provides, in pertinent part:

(1) Disability

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more major

- 11 -

life activities of such individual;
(B) a record of such an impairment; or . . .

(2) Major life activities

\*\*\*

(B) Major bodily functions

For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, **functions of the immune system**, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3)

For purposes of paragraph (1)(C):

\*\*\*

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

*Id*. (emphasis added). Under the plain language of the Americans with Disabilities Act, problems of the immune system are considered a disability. Despite Father's protestation that the child is not limited in her ability to live a normal life in terms of her activities, the evidence does not support Father's argument. Although the child testified that she can participate in most activities, she (and Mother) testified that a common cold can require hospitalization and blood transfusions. In fact, the child has had many blood transfusions since birth. In addition, the medical billing statements that are included in the record clearly indicate that the child has required frequent hospitalizations. Mother testified, and Father did not dispute, that the child's condition is genetic and incurable, i.e., not "transitory and minor". The mere fact that the child can participate in activities and does not need constant medical assistance does not negate the underlying diagnosis that can lead to life-threatening amplification of even the most minor cold. Accordingly, we conclude that the evidence supports a finding of disability such that the child is in need of continuing health insurance coverage past the age of majority. Therefore, we affirm the trial court's order requiring Father to provide health insurance until the child reaches twenty-one.

### E. Attorney's Fees

In *Sandusky v. Sandusky*, No. M2000-00288-COA-R3-CV, 2001 WL 327898 (Tenn. Ct. App. April 5, 2001), we stated:

> Spouses who are required to return to court to enforce their former spouse's child support obligations may recover their legal expenses. Tenn. Code Ann. § 36-5-103(c) (Supp. 2000).[2] The purpose of permitting these awards is to protect and promote a child's right to support. Accordingly, requiring parents who frustrate child support orders to underwrite the expense of vindicating a child support order is appropriate. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).
>
> While decisions regarding requests for legal expenses are discretionary, *Placencia v. Placencia*, 3 S.W.3d 497, 504 (Tenn. Ct. App. 1999), awards for these expenses incurred by a spouse to vindicate child support rights are becoming familiar and almost commonplace. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989); *Sherrod v. Wix*, 849 S.W.2d at 785. These awards are appropriate when the parent seeking to defend or to enforce a child support obligation prevails or when requiring the prevailing spouse to pay his or her legal expenses would inequitably reduce the amount of support the child receives. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). A spouse who is otherwise entitled to an award for legal expenses should not be prevented from collecting them simply because he or she might be financially able to pay these fees on their own. *Gaddy v. Gaddy*, 861 S.W.2d 236, 241 (Tenn. Ct. App. 1992).

*Sandusky*, 2001 WL 327898.

As discussed above, there is fault on the part of both parties in this case. Under the

---

[2] Tennessee Code Annotated Section 36-5-103(c) currently provides:

(c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

fact of this case, the parties should have come back to court immediately after Mother was laid off in order to address the issue of the child's insurance coverage and the payment of uncovered medical expenses. Both having failed to do so, both must bear some fault for the accrual of uncovered medical expenses. Furthermore, there is no indication that Father was ever in arrears on any of his support obligations. In fact, he continued to pay the Mother $66 per month to reimburse her for insurance premiums that, by all accounts, Mother never paid. There is also evidence to suggest that Mother did not promptly send the child's outstanding medical bills to Father so that he would be on notice that he owed uncovered amounts. For these reasons, we conclude that the trial court abused its discretion in ordering Father to pay any of Mother's attorney's fees. Accordingly, we reverse the trial court's order in this regard.

Both parties ask this Court to award their respective attorney's fees on appeal. In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." ***Moran v. Wilensky***, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010) (citing ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). Considering the equities between the parties and the ultimate disposition of this appeal, we decline to award either party's attorney's fees on appeal.

### V. Conclusion

For the foregoing reasons, we reverse the order of the trial court to the extent that it requires Father to pay any of Mother's attorney's fees. We remand the case for entry of a judgment in favor of Father and against Mother for a $1,914.00 credit for necessaries Father provided. The trial court's order is otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to the Appellant, Brian Stacy Rowland and his surety, and one-half to the Appellee, Natalie Rowland Stewart, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE,